No. 24-2939

---

# United States Court of Appeals
## For the Seventh Circuit

---

ALEKSEY RUDERMAN, ARTURO SALDIVAR, and CHRIS POCKNELL on
behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*

v.

KENOSHA COUNTY, KENOSHA COUNTY SHERIFF'S DEPARTMENT,
DAVID G. BETH, ROBERT HALLISY, LARRY APKER, MARC LEVIN, JUSTIN
MILLER, and BILL BETH,

*Defendants-Appellees*

---

On appeal from judgment of the
United States District Court for the Eastern District of Wisconsin
Case No. 2:23-cv-01336-BHL

The Honorable Brett H. Ludwig

---

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

---

Elizabeth N. Mazur
Margaret E. Truesdale
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312.580.0100
emazur@hsplegal.com
mtruesdale@hsplegal.com

Jay Kumar
Jay Kumar Law
73 W. Monroe St., #100
Chicago, IL 60603
312.767.7903
jay@jaykumarlaw.com

Raphael Janove
Janove PLLC
500 7th Avenue, 8th Floor
New York, NY 10018
646.347.3940
raphael@janove.law

Jacob S. Briskman
Law Office of Jacob S. Briskman
2624 W. Fullerton Ave.
Chicago, IL 60647
312.945.6207
Jacob.Briskman@gmail.com

*Attorneys For Plaintiffs-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 2

I.     Defendants Cannot Meaningfully Distinguish the Two Federal Appellate Court and Nine District Court Decisions Ruling that the Plain Language of § 1589 Unambiguously Applies to Civilly Detained Immigrants Performing Labor in Detention Facilities. ........................................................................... 2

II.    Though Defendants Argue That Plaintiffs Fail to Satisfy the Elements of § 1589, This Contention Fails. ...................................................................... 5

    A.    "Whoever" Includes Kenosha County and the Individual Defendants. . 5

    B.    "Labor or Services" Includes Janitorial Labor. ...................................... 7

    C.    The Term "Obtain" Does Not Require a Would-Be Violator to Enjoy a Personal Benefit. .................................................................................... 9

    D.    Cell Lockdown and Solitary Confinement Constitute "Serious Harm" and "Physical Restraint." ....................................................................... 10

III.   Finding No Support in the Statutory Text, Defendants Wrongly Urge this Court to Ignore it. ....................................................................................... 123

    A.    Defendants' Interpretations of the TVPA's Preamble and Legislative History Do Not Justify Ignoring its Unambiguous Text. ..................... 10

    B.    Defendants are Wrong in Contending that the TVPA's Plain Text Interferes with State and Local Control Over Jails............................. 11

    C.    Defendants Mischaracterize *Taylor*. ...................................................... 12

V.    Defendants Are Wrong in Arguing that the TVPA is Unconstitutionally Vague. ........................................................................................................... 12

V.    Despite Defendants' Contentions to the Contrary, Neither § 1983 Nor *Monell* Has Any Application to Plaintiffs' TVPA claims. ......................................... 12

VI.   Defendants Argue that the "Civic Duty Exception" to the Thirteenth Amendment Bars Plaintiffs' TVPA Claim, but this Argument Fails. ............ 19

VII.    Contrary to Defendants' Arguments, They are Not Immune from TVPA Liability. ........................................................................................... 22

      A.    The Individual Defendants Are Not Entitled to Qualified Immunity.  23

      B.    "Derivative Sovereign Immunity" Does Not Shield Defendants from Liability .................................................................................................... 24

CONCLUSION. ................................................................................................ 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .......................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Agrawal v. Briley*,
   No. 02 C 6807, 2004 WL 1977581 (N.D. Ill. Aug. 25, 2004) ........................... 18

*Alvarado v. Litscher*,
   267 F.3d 648 (7th Cir. 2001) .................................................................. 24

*Appel v. King Cnty.*,
   No. 2:21-cv-00621-TL-JRC, 2022 WL 1105810 (W.D. Wash. Jan. 4, 2022).... 18

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................. 11

*Barahona v. LaSalle Management Company, L.L.C.*,
   No. 7:23-cv-00024-WLS (M.D. Ga. Sept. 30, 2024) .......................................... 2

*Barrientos v. CoreCivic, Inc.*,
   332 F. Supp. 3d 1305 (M.D. Ga. 2018) ............................................... 3, 15

*Bauer v. City of Pleasanton*,
   No. 19-cv-04593-LB, 2021 WL 2224016 (N.D. Cal. June 2, 2021) ................. 18

*Bijeol v. Nelson*,
   579 F.2d 423 (7th Cir. 1978) .................................................................. 22

*Bond v. United States*,
   572 U.S. 844 (2014) ........................................................................... 9, 11

*Bostock v. Clayton Cnty., Georgia*,
   590 U.S. 644 (2020) ............................................................................. 10

*Burrell v. Staff*,
   60 F.4th 25 (3d Cir. 2023) ....................................................................... 7

*Butler v. Perry*,
   240 U.S. 328 (1916) ............................................................................. 22

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ............................................................................. 24

*Ciomber v. Coop. Plus, Inc.*,
   527 F.3d 635 (7th Cir. 2008) .................................................................. 16

*Coleman v. Hardy,*
    690 F.3d 811 (7th Cir. 2012) ................................................. 9, 11, 18

*Cook Cnty., Ill. v. U.S. ex rel. Chandler,*
    538 U.S. 119 (2003) ............................................................ 6, 17

*Ditullio v. Boehm,*
    662 F.3d 1091 (9th Cir. 2011) ................................................. 20

*Figgs v. GEO Grp., Inc.,*
    No. 1:18-cv-00089-TWP-MPB, 2019 WL 1428084 (S.D. Ind. Mar. 29, 2019) ... 4

*Francisco v. Susano,*
    525 Fed. Appx. 828 (10th Cir. 2013) .......................................... 20

*Gilead Cmty. Servs., Inc. v. Town of Cromwell,*
    112 F.4th 93 (2d Cir. 2024) .................................................. 17

*Glisson v. Indiana Dep't of Corr.,*
    849 F.3d 372 (7th Cir. 2017) ................................................. 18

*Gonzalez v. CoreCivic, Inc.,*
    986 F.3d 536 (5th Cir. 2021) ................................................. 3

*Griffin v. Breckenridge,*
    403 U.S. 88 (1971) ........................................................... 20

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
    599 U.S. 166 (2023) .......................................................... 17

*Hegwood v. City of Eau Claire,*
    676 F.3d 600 (7th Cir. 2012) ................................................. 15

*Hutchins v. U.S. Dep't of Lab.,*
    683 F.3d 75 (4th Cir. 2012) .................................................. 7

*Jackson Cnty. v. State, Dep't of Nat. Res.,*
    2006 WI 96 ................................................................... 7

*Jobson v. Henne,*
    355 F.2d 129 (2d Cir. 1966) .................................................. 14

*Jogi v. Voges,*
    480 F.3d 822 (7th Cir. 2007) ................................................. 10

*Koger v. Bryan*,
    523 F.3d 789 (7th Cir. 2008) ........................................................................ 23

*Los Angeles Cnty., Cal. v. Humphries*,
    562 U.S. 29 (2010) ...................................................................................... 17

*Martin v. Piserchia*,
    No. CV 23-21669 (RMB-EAP), 2024 WL 3812071 (D.N.J. Aug. 14, 2024)...... 17

*Martinez-Rodriguez v. Giles*,
    31 F.4th 1139 (9th Cir. 2022) ................................................................... 9, 20

*McGovern v. City of Philadelphia*,
    No. CIV. A. 07-3817, 2008 WL 269498 (E.D. Pa. Jan. 30, 2008).................... 18

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) ........................................................... 3, 4, 5, 26

*Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*,
    841 F.3d 1129 (10th Cir. 2016) ..................................................................... 19

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ...................................................................... 6, 16, 17, 18

*N. Ins. Co. of New York v. Chatham Cnty., Ga.*,
    547 U.S. 189 (2006) ........................................................................................ 6

*Nelson v. Miller*,
    570 F.3d 868 (7th Cir. 2009) ........................................................................ 23

*Novoa v. GEO Grp., Inc.*,
    EDCV 17-2514 JGB (SHKx), 2018 WL 3343494
    (C.D. Cal. June 21, 2018) ................................................................ 3, 4, 22, 26

*Return Mail, Inc. v. United States Postal Serv.*,
    587 U.S. 618 (2019) ........................................................................................ 6

*Ruderman v. McHenry County*,
    No. 3:22-cv-50115, 2023 WL 130496 (N.D. Ill. Jan. 9, 2023) ............... 2, 22, 24

*Ruelas v. County of Alameda*,
    No. 19-cv-07637-JST, 2021 WL 12144269 (N.D. Cal. June 24, 2021)............... 2

*Seitz v. City of Elgin,*
    719 F.3d 654 (7th Cir. 2013) .......................................................... 6, 7

*Taylor v. Salvation Army National Corp.,*
    110 F.4th 1017 (7th Cir. 2024) ..................................... 8, 12, 20, 21

*U.S. v. Edwards,*
    995 F.3d 342 (4th Cir. 2021) ............................................................ 19

*U.S. v. Kozminski,*
    487 U.S. 931 (1988) .............................................................. 20, 21

*United States v. Bly,*
    510 F.3d 453 (4th Cir. 2007) .............................................................. 6

*United States v. Calimlim,*
    538 F.3d 706 (7th Cir. 2008) .............................................................. 8

*United States v. Callahan,*
    801 F.3d 606 (6th Cir. 2015) ............................................................ 21

*United States v. Chaudhri,*
    134 F.4th 166 (4th Cir. 2025) ............................................................ 7

*United States v. Coscia,*
    866 F.3d 782 (7th Cir. 2017) ............................................................ 13

*United States v. Dann,*
    652 F.3d 1160 (9th Cir. 2011) .......................................................... 21

*United States v. Jones,*
    689 F.3d 696 (7th Cir. 2012) ...................................................... 13, 15

*United States v. Kaufman,*
    546 F.3d 1242 (10th Cir. 2008) ........................................................ 21

*United States v. Lanier,*
    520 U.S. 259 (1997) ........................................................................ 12

*United States v. Toviave,*
    761 F.3d 623 (6th Cir. 2014) ...................................................... 8, 19

*United States v. United Mine Workers of Am.,*
    330 U.S. 258 (1947) .......................................................................... 5

*United States v. Wilson*,
　159 F.3d 280 (7th Cir. 1998) ........................................................ 14

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
　529 U.S. 765 (2000) ...................................................................... 6

*Vinyard v. Wilson*,
　311 F.3d 1340 (11th Cir. 2002) ................................................... 23

*Walker v. Snyder*,
　213 F.3d 344 (7th Cir. 2000) ...................................................... 23

*Ware v. Bishop*,
　No. 1:23-CV-00220-BU, 2024 WL 1915396 (N.D. Tex. Jan. 31, 2024)............ 18

*Yearsley v. W.A. Ross Construction Co.*,
　309 U.S. 18 (1940) ................................................................ 24, 26

*Yeend v. Akima Glob. Servs., LLC*,
　No. 1:20-CV-01281 (AMN/PJE), 2025 WL 959202
　(N.D.N.Y. Mar. 31, 2025) ........................................................ 2, 24

## Statutes

1 U.S.C. § 1 ............................................................................... 6, 7
18 U.S.C. § 1584 ........................................................................... 21
18 U.S.C. § 1589 ....................................................................... passim
18 U.S.C. § 1595 ......................................................................... 9, 18
42 U.S.C. § 1983 ....................................................................... passim
8 U.S.C. § 1226 ............................................................................ 11
8 U.S.C. § 1231 ............................................................................ 11

## Other Authorities

48 C.F.R. § 1.104 ........................................................................... 5
48 C.F.R. § 52.222-50 ...................................................................... 5
Fed. R. Civ. P. 15 ......................................................................... 26
*PBNDS 2011*, ICE, https://www.ice.gov/doclib/detention-
　standards/2011/pbnds2011r2016.pdf ............................................ 25
U.S. Const. art. I, § 8 .................................................................... 14

## Introduction

Defendants ask this Court to depart from a uniform body of caselaw holding that § 1589's plain language unambiguously applies to civilly detained immigrants forced to perform janitorial labor. Yet Defendants do not meaningfully distinguish these precedents or identify flaws in their reasoning. Nor do Defendants identify any § 1589 element Plaintiffs have failed to satisfy. Simply put, Defendants fall within the broad meaning of "whoever," and they "obtain[ed]" Plaintiffs' janitorial "labor" under threat of "serious harm" in the form of solitary confinement.

To distract from § 1589's plain meaning, Defendants argue subjecting them to TVPA liability is bad policy, but policy arguments cannot change the meaning of unambiguous statutory text or render a statute unconstitutionally vague. And if policy concerns were relevant, they would weigh in Plaintiffs' favor. The plain language reading of § 1589 protects potentially thousands of civilly detained immigrants from the indignity of forced labor under threat of solitary confinement for the purposes of maximizing federal contractors' profits.

Defendants' remaining arguments—that Plaintiffs should have brought their TVPA claims under § 1983, that the "civic duty exception" to the Thirteenth Amendment bars liability, and that they enjoy qualified or derivative immunity—all fail.

For the reasons stated in this reply and Plaintiffs' opening brief, this Court should reverse the district court's judgment.

## Argument

I. **Defendants Cannot Meaningfully Distinguish the Two Federal Appellate Court and Nine District Court Decisions Ruling that the Plain Language of § 1589 Unambiguously Applies to Civilly Detained Immigrants Performing Labor in Detention Facilities.**

Plaintiffs' opening brief (pp. 14-18) summarized the decisions of the Fifth and Eleventh Circuits and seven district courts holding that § 1589 unambiguously applies to civilly detained immigrants performing labor in detention facilities. Recently, two more judges reached the same conclusion. *See Yeend v. Akima Glob. Servs., LLC*, No. 1:20-CV-01281 (AMN/PJE), 2025 WL 959202, at *4, *12 (N.D.N.Y. Mar. 31, 2025) (§ 1589 applies to civilly detained immigrants performing janitorial duties in detention facility common areas); *Barahona v. LaSalle Management Company, L.L.C.*, Case No. 7:23-cv-00024-WLS (M.D. Ga. Sept. 30, 2024), ECF No. 73 at 8, 12-14 (same).

Defendants raise three arguments to distinguish these eleven decisions from the facts here, but each argument fails. First, Defendants contend that these cases are inapplicable because the defendants are "private corporate jails . . . whose for-profit operations rely on lucrative billion-dollar contracts with the federal government to hold detainees." Appellees' Br. at 20, 38. Defendants ignore that *Ruderman v. McHenry County*, No. 3:22-cv-50115, 2023 WL 130496 (N.D. Ill. Jan. 9, 2023), and *Ruelas v. County of Alameda*, No. 19-cv-07637-JST, 2021 WL 12144269 (N.D. Cal. June 24, 2021), *rev'd on unrelated grounds*, 108 F.4th 1208 (9th Cir. 2024), recognized civilly detained immigrants' § 1589 claims against counties for work performed in county jails. As to the remaining nine decisions, this is a

distinction without a difference. Even though the Kenosha County Jail is run by a sheriff's office instead of a corporation, Defendants acknowledge their ICE contract is a purely revenue generating endeavor. *See* SA-018 ¶¶ 18-19; *see also* Dist. Ct. ECF No. 38 at 36-37 ("Defendant Justin Miller specifically commented to reporters in October 2023 that the county continues to suffer from the loss of millions of dollars in revenue after ICE suspended its contract with Kenosha County in 2020."). Moreover, as established in Plaintiffs' opening brief (pp. 9-10) and below in Part II.A., the term "whoever" in § 1589 covers local governments, and Defendants have never disputed that "whoever" covers the Individual Defendants. Accordingly, Defendants cannot sidestep the persuasive reasoning of these eleven decisions on this basis.

Second, Defendants argue that in certain of these cases, the civilly detained immigrants performed labor in addition to janitorial labor. Appellees' Br.at 39. Defendants do not explain why the existence of other types of job assignments would render these cases "fundamentally inapposite." *Id.* at 38. In each of the cases Defendants cite, janitorial work was among the work assignments at issue, and the courts embraced the detainees' claims as they related to janitorial labor. *See id.* at 38-39; *Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2018 WL 3343494, at *2 (C.D. Cal. June 21, 2018) (jobs included "janitorial"); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 911 (10th Cir. 2018) (work included "housing unit sanitation"); *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 537 (5th Cir. 2021) (jobs included "clean[ing] the detention facilities"); *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d

1305, 1308 (M.D. Ga. 2018), *aff'd,* 951 F.3d 1269 (11th Cir. 2020) (jobs included "scrubbing bathrooms" and "cleaning floors"); *Figgs v. GEO Grp., Inc.*, No. 1:18-cv-00089-TWP-MPB, 2019 WL 1428084, at *1 (S.D. Ind. Mar. 29, 2019) (jobs included "cleaning"). Furthermore, as discussed below in Part II.B., the term "labor or services" in § 1589 includes janitorial labor. For these reasons, the janitorial labor alleged here is not a valid basis to distinguish this case from the other eleven cases ruling that § 1589 applies to civilly detained immigrants working in detention facilities.

Third, Defendants attempt to distinguish *Novoa* and *Menocal* on the ground that ICE's contract with the defendants in those cases "*referenced the TVPA's labor provisions and concerns.*" Appellees' Br. at 38. But this argument is inappropriate at the pleading stage. This Court should not draw comparisons between the contracts in *Novoa* and *Menocal* and Kenosha County's ICE contract because it is extrinsic to the Complaint. *See* Appellants' Br. at 42-43. Even if the Court could consider the contract, however, Defendants' attempt at distinguishing *Novoa* and *Menocal* on this basis fails. Though Defendants argue that the lack of references to the TVPA in the ICE contract renders § 1589 unconstitutionally vague, Appellees' Br. at 30-31, 38, as discussed below in Part IV, contract language cannot trump statutory text. Moreover, despite saying that the contracts in *Novoa* and *Menocal* reference the TVPA, Defendants are unable to cite any provision of those contracts that do so. Appellees' Br. at 38. The closest they come is pointing to the court's statement in *Menocal* that the contract incorporated Federal Acquisition Regulation ("FAR")

52.222-50, which forbids federal contractors from "us[ing] forced labor." 48 C.F.R. § 52.222-50(b)(3). But just as FAR 52.222-50 applies to the federal contractor in *Menocal*, it applies to the federal contractor here, Kenosha County, *see* 48 C.F.R. § 1.104 ("The FAR applies to all acquisitions as defined in part 2 of the FAR, except where expressly excluded."). Accordingly, this is not a genuine distinction.

In short, Defendants fail in their attempts to distinguish the eleven carefully considered decisions cited here and in Plaintiffs' opening brief (pp. 14-18). Thus, this Court should follow their persuasive reasoning.

## II.    Though Defendants Argue That Plaintiffs Fail to Satisfy the Elements of § 1589, This Contention Fails.

Plaintiffs' allegations satisfy every element of § 1589, and each of Defendants' arguments to the contrary fails.

### A.    "Whoever" Includes Kenosha County and the Individual Defendants.

Defendants do not dispute that "whoever" encompasses the Individual Defendants. Appellees' Br. at 16. As to Kenosha County, however, Defendants argue that caselaw establishes a "presumption" that counties are excluded from "whoever," and that Plaintiffs would need to "*rebut the presumption* by pointing to [a] textual feature that includes local government" for the TVPA to apply. *Id.* at 11 (emphasis added). This reflects a fundamental misunderstanding of basic legal principles. The cases Defendants cite discuss a presumption that "person" excludes "the sovereign," but "the sovereign" refers to states and the federal government— not cities and counties. Appellees' Br. at 10-11 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275-76 (1947) ("sovereign" refers to the United

States); *United States v. Bly*, 510 F.3d 453, 465 (4th Cir. 2007) ("sovereign" refers to the State of Virginia and state agency University of Virginia); *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 626 (2019) ("sovereign" refers to the federal government and federal agency the Postal Service); *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787 (2000) ("sovereign" refers to states and state agencies)); *see also N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties."). Binding precedents establish a presumption that "persons" includes counties—not the reverse. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 688-89 (1978); *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125-29 (2003).

Critically, and fatal to Defendants' argument, in drafting the TVPA, Congress selected a word even broader than "person": it applied liability to "whoever" violates § 1589's mandates. "Whoever" undoubtedly applies to municipalities. For example, in *Seitz v. City of Elgin*, 719 F.3d 654, 660 (7th Cir. 2013), this Court recognized methods for Congress to ensure that a statute clearly creates liability for municipalities. The first method was to use the term "whoever," which is "much broader" than "person" and clearly includes municipalities. *Id.* at 659-60. The second method was to use the term "person" but to not define "person," "thereby reverting to the general definition of 'person' in 1 U.S.C. § 1, which encompasses municipalities." *Id.* The TVPA precisely follows the instructions in *Seitz* to clearly establish liability for municipalities by using the broad term "whoever." 18 U.S.C. § 1589. Indeed, the Fourth Circuit recently reiterated that §1589's language—

"Whoever . . . obtains the labor or services of a person"—is "broad," and refused the defendants' request to establish a carveout from "whoever." *United States v. Chaudhri*, 134 F.4th 166, 177 (4th Cir. 2025); *see also Burrell v. Staff*, 60 F.4th 25, 40 (3d Cir. 2023) ("[P]laintiffs have stated a TVPA claim as to the County.").

Defendants advance two other arguments for excluding Kenosha County from "whoever," but neither passes muster. To argue that counties are not corporations under 1 U.S.C. § 1, Defendants cite only *Jackson Cnty. v. State, Dep't of Nat. Res.*, 2006 WI 96, ¶¶ 16, 34, 36, but this case expressly describes counties as "municipal corporations." Besides, this Court already ruled that 1 U.S.C. § 1 "encompasses municipalities." *Seitz*, 719 F.3d at 660; *see also Hutchins v. U.S. Dep't of Lab.*, 683 F.3d 75, 77-78 (4th Cir. 2012).

Lastly, Defendants list statutory provisions that expressly refer to local governments, but those provisions do not support reading "whoever" in the TVPA to exclude Kenosha County. Appellees' Br. at 14-16. That Congress sometimes exempts local governments from a statute's coverage or specifically regulates local governments has no bearing on the breadth of "whoever." An express reference to local governments is not necessary when the statutory language is as broad as the TVPA's, particularly where this Court has already recognized "whoever" encompasses municipalities. *Seitz*, 719 F.3d at 660.

## B.    **"Labor or Services" Includes Janitorial Labor.**

Defendants do not dispute the definitions of "labor or services" Plaintiffs cited in their opening brief (pp. 10-11); they call these definitions an "unremarkable conclusion." Appellees' Br. at 16. Furthermore, Defendants concede that "jail

housekeeping falls within those definitions" of "labor or services" Plaintiffs cited. *Id.* Indeed, Defendants argue only that these definitions of "labor or services" result in bad policy when used to determine liability. Specifically, they argue that TVPA liability could befall a "parent, teacher, employer, [or] probation agent" who requires a "child," "student," "employee," or "parolee" to clean. *Id.* at 17. This policy argument is both misleading, invoking liability scenarios that courts have explicitly held do not apply, and irrelevant to this Court's statutory analysis. It also ignores that this Court has already held that cleaning labor amounts to "labor or services" under the TVPA, *United States v. Calimlim*, 538 F.3d 706, 709-10 (7th Cir. 2008), and that such a holding here would in no way expand that term.

In *United States v. Toviave*, the Sixth Circuit held that § 1589 did not apply to a guardian forcing a child to work, 761 F.3d 623 (6th Cir. 2014), and that ruling is consistent with Defendants facing TVPA liability, as discussed in Plaintiffs' opening brief (pp. 26-29). Similarly, a probation or parole officer would not face § 1589 liability for instructing a probationer or parolee to perform community service. If such community service were court ordered, the *Rooker-Feldman* doctrine would bar any TVPA action arising therefrom, *Taylor v. Salvation Army National Corp.*, 110 F.4th 1017, 1026 (7th Cir. 2024), and if the serious harm faced for non-compliance were a product of the "legitimate restraints of a criminal judgment," a TVPA claim would fail, as in *Taylor*. *Id.* at 1032. In addition, if it were demonstrated that the TVPA's regulation of community service by people serving criminal sentences would upset "traditional state authority [over] the punishment of local criminal activity," a

court would require a particularly "clear statement" of Congress's intent to do so. *Bond v. United States*, 572 U.S. 844, 858-59 (2014). Finding none in the TVPA, a court would be justified in denying such TVPA claims. *Id.* Lastly, Plaintiffs disagree that it would be bad policy for a teacher or employer to face TVPA liability for forcing their students or employees to perform janitorial labor in the common areas of their school or workplace without pay and under threat of serious harm. Indeed, many TVPA convictions arise out of precisely these types of abusive employee-employer relationships. *See, e.g.,* Appellants' Br. at 11 (citing cases).

## C. The Term "Obtain" Does Not Require a Would-Be Violator to Enjoy a Personal Benefit.

Defendants argue for the first time on appeal that Plaintiffs failed to satisfy § 1589's "obtain" element as to the Individual Defendants because they did not receive any personal benefit from Plaintiffs' janitorial labor, such as cleaning of their homes. Appellees' Br. at 17. Because Defendants never raised this argument in the district court, it is waived. *Coleman v. Hardy*, 690 F.3d 811, 818 (7th Cir. 2012). Even if it were not waived, it would fail. Based on the plain meaning of "obtain," one can "obtain" labor without receiving a personal benefit, *see, e.g., Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1157 (9th Cir. 2022) (submitting to jury § 1589 claim against employee of dairy farm that used forced labor), and Defendants cite no authority to the contrary. Indeed, the TVPA establishes a private cause of action against whoever violates the TVPA, on the one hand, and "whoever knowingly benefits" from such a violation, on the other hand. 18 U.S.C. § 1595. "Knowingly benefit[]" is a *separate* basis of liability; it is not implicit in

9

"obtain."

### D. Cell Lockdown and Solitary Confinement Constitute "Serious Harm" and "Physical Restraint."

Despite discussing the "serious harm" element for two pages, not once do Defendants dispute that cell lockdown and solitary confinement constitute "serious harm" and "physical restraint" under the TVPA. *See* Appellees' Br. at 18-20. Defendants' arguments boil down to a recapitulation of their policy argument that the TVPA should not apply to them. But this Court does not eschew a statute's unambiguous text in favor of policy arguments. *See* Appellants' Br. at 7-8.

In sum, Plaintiffs satisfy § 1589's elements, and Defendants' arguments to the contrary fail.

## III. Finding No Support in the Statutory Text, Defendants Wrongly Urge this Court to Ignore it.

This Court should reject Defendants' invitations to ignore § 1589's plain language.

### A. Defendants' Interpretations of the TVPA's Preamble and Legislative History Do Not Justify Ignoring its Unambiguous Text.

Without identifying any ambiguous word or phrase in the TVPA, Defendants improperly urge the Court to set aside the statute's plain language in favor of Defendants' interpretation of the Act's legislative history and preamble. Appellees' Br. at 21-23. Importantly, that approach would violate binding precedent directing courts *not* to consider a statute's legislative history or preamble *unless* the statutory text is ambiguous. *See, e.g., Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674 (2020); *Jogi v. Voges*, 480 F.3d 822, 833-34 (7th Cir. 2007). Here, as discussed in

Part II above and in Plaintiffs' opening brief (pp. 7-14), the statutory text is unambiguous. Accordingly, Defendants cannot inject ambiguity into the text through their musings on selected passages from the TVPA's legislative history and preamble.

## B. Defendants are Wrong in Contending that the TVPA's Plain Text Interferes with State and Local Control Over Jails.

In addition, citing *Bond*, Defendants seem to ask this Court to ignore § 1589's plain language on the grounds that its application to "local government-run jails" would "interfere[] with state and local control" thereof. Appellees' Br. at 8, 20, 23. First, Defendants waived this argument by not developing it in the district court. *Coleman*, 690 F.3d at 818. But even if not waived, this argument fails because unlike in *Bond*, the facts here do not implicate federalism concerns.

In *Bond*, the Court declined to interpret a statute in a way that would severely intrude upon "traditional state authority [over] the punishment of local criminal activity." 572 U.S. at 857-60. Unlike *Bond*, this case does not involve traditional state authority. Kenosha County was operating as a federal contractor, renting out Jail space to ICE, a federal agency enforcing federal statutes, for $70 per day per detainee. SA-018, ¶¶ 17-18. Despite being housed at the Jail, the detainees were in custody pursuant only to the power and authority of the federal government. 8 U.S.C. §§ 1226, 1231. Neither Kenosha County nor the State of Wisconsin had any independent authority to detain these individuals. See *Arizona v. United States*, 567 U.S. 387, 401–02 (2012). Thus, no traditional state authority is involved here. Defendants' argument might have more purchase if this case involved state

11

prisoners or pre-trial detainees, but it does not.

### C. Defendants Mischaracterize *Taylor*.

Defendants misquote *Taylor* as stating that the TVPA "is *simply not* a vehicle for the regulation of living and working conditions of individuals serving a sentence of parole or probation." *See* Appellees' Br. at 25 (emphasis added). But the order of the words matter, and the correct quote from *Taylor* is that the TVPA "is *not simply* a vehicle for the regulation of living and working conditions of individuals serving a sentence of parole or probation." 110 F.4th at 1034 (emphasis added). Defendants mischaracterize *Taylor* as holding that the TVPA does not apply to probationers or parolees, when in fact, *Taylor* simply states that the TVPA applies to additional sets of circumstances beyond just those of probationers and parolees. *Id.* And, as discussed in Plaintiffs' opening brief (pp. 24-26), *Taylor* does not countenance ignoring the TVPA's plain language.

## IV. Defendants Are Wrong in Arguing that the TVPA is Unconstitutionally Vague.

Despite arguing that § 1589 is void for vagueness, Defendants do not actually point to any word or phrase in § 1589 that they contend is vague. Instead, Defendants argue that "vagueness" is not the "dispositive factor" in a void-for-vagueness challenge. Appellees' Br. at 5. That is false. The clarity or vagueness of the statutory text (or, where necessary, the caselaw illuminating its meaning) is "the touchstone" of such a challenge. *United States v. Lanier*, 520 U.S. 259, 266–67 (1997). Vague statutory language is a prerequisite to a void-for-vagueness challenge, and Defendants' failure to identify any is fatal. *United States v. Jones*,

689 F.3d 696, 701–02 (7th Cir. 2012) ("[T]he focus of any due-process vagueness challenge is statutory clarity."). Defendants raise four primary arguments in support of their vagueness argument, none of which contends with § 1589's statutory clarity. All four miss the mark.

First, Defendants argue that § 1589 fails to give Defendants due notice because ICE's contract, handbook, and standards did not expressly reference the TVPA. Appellees' Br. at 30-31. To begin, the contract and handbook Defendants reference are not even properly before this Court. *See* Part I; Appellants' Br. at 42-43. Even more importantly, this argument fundamentally misconstrues the void-for-vagueness doctrine. ICE's contracts, handbook, and standards—or any other documents beyond the statute—cannot render § 1589 unconstitutionally vague. This Court already foreclosed this argument in *United States v. Coscia*, 866 F.3d 782, 792–93 (7th Cir. 2017), where the defendant contended that the "absence of *any* guidance external to the statutory language—no legislative history, no recognized industry definition, no [agency] rule"—rendered the statute at issue unconstitutionally vague. This Court deemed the lack of external guidance totally "irrelevant," and rejected the vagueness challenge. *Id.* at 793. This Court should do the same here.

Defendants further argue that § 1589 is vague because "Kenosha County has not been told to become TVPA compliant" and county officials therefore did not have the "foggiest clue" that the TVPA applied to them. Appellees' Br. at 36. This argument ignores the "traditional rule in American jurisprudence . . . that

ignorance of the law is no defense . . . ." *United States v. Wilson*, 159 F.3d 280, 288–89 (7th Cir. 1998). Indeed, "whether a person knows that a law has been passed regulating certain conduct is a question separate and distinct from the question of whether that law, as written, adequately describes the conduct it seeks to criminalize" or otherwise prohibit. *Id.* at 288.

Second, Defendants argue that § 1589 is unconstitutionally vague because courts have held that certain cleaning by inmates does not violate the Thirteenth Amendment. Appellees' Br. at 32, 34. This argument is nonsensical. As discussed in Part VI below, § 1589 undoubtedly prohibits conduct beyond what the Thirteenth Amendment prohibits, but that does not render it unconstitutionally vague. Congress has the power to pass statutes that regulate conduct even if the Constitution itself does not forbid the same conduct. *See* U.S. Const. art. I, § 8.[1]

Third, Defendants contend that the jail setting is unique, and this case should therefore be analyzed differently from other void-for-vagueness challenges. Appellees' Br. at 33-36. This argument amounts to nothing more than a repackaging of Defendants' policy argument that the TVPA should not apply to them. But such policy arguments have no place in an unconstitutional vagueness

---

[1] Defendants cite *Jobson v. Henne*, 355 F.2d 129, 131 (2d Cir. 1966), for the proposition that "those civilly committed may be required to perform housekeeping" without violating the Thirteenth Amendment. Appellees' Br. at 32, 42. But in *Jobson* the court reasoned that "the Thirteenth Amendment may be violated if a mental institution requires inmates to perform chores which have no therapeutic purpose or are not personally related, but are required to be performed solely in order to assist in the defraying of institutional costs . . . ." *Jobson*, 355 F.2d at 132 n.3.

inquiry, *see Jones*, 689 F.3d at 701-02, and they are baseless. Though Defendants reference "[t]he difficulties of operating a detention center," Appellees' Br. at 35, they ignore simple solutions like relying on paid detainee workers or janitorial staff to clean the Jail's common areas.

Fourth, Defendants reiterate their view that the phrase "labor or services" is so broad that it leads to bad policy outcomes. Appellees' Br. at 37. But again, what Defendants consider bad policy has no relevance to the void-for-vagueness inquiry. Moreover, though Defendants express concern that "labor or services" might cover detainee tasks, such as "mak[ing] their own beds, put[ting] away their own food trays, pick[ing] up their clothes, or clean[ing] up after themselves after using the recreational [sic], dayrooms, cafeterias, or other common areas," Appellees' Br. at 37, those are not the allegations here, which extend *far* beyond detainees merely cleaning up after themselves. Defendants forced Plaintiffs to scrub showers, disinfect tables and phones, sweep floors, and clean the indoor and outdoor recreational areas, multi-purpose room, hallways, and gym. Appellants' Br. at 44. In an as-applied vagueness challenge, such as this one, the Court must examine the facts at hand—not any hypothetical facts. *See Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012). In another case with a different set of facts, a court might determine that merely cleaning up after oneself does not amount to "labor or services" under the TVPA, but that question is not before this Court. Moreover, a reading of "labor or services" that covers the janitorial labor performed here comports with the United States' amicus brief in *Barrientos*, which argued that the

TVPA does not cover "basic *personal* housekeeping" outlined in ICE's Performance-Based National Detention Standards ("PBNDS"), like making one's own bed and not leaving debris or clutter on the floors or dividers. Dist. Ct. ECF No. 38-1 at 13 (emphasis added); Appellees' Br. at 36-37.

Defendants do not explain how it relates to their vagueness argument, but as part of it they contend that civilly detained immigrants and pretrial detainees have "equal status" and that the district court acted properly in "conflating" them. Appellees' Br. at 39. The cases Defendants cite in support of this argument provide only that involuntarily committed people and pretrial detainees enjoy substantive due process rights under the Fourteenth Amendment, which offers greater protection than the Eighth Amendment rights available to convicted prisoners. *Id.* (citing cases). These cases do not justify equating civilly detained immigrants with pretrial detainees for the purposes of a TVPA analysis. And Defendants do not even attempt to argue that civilly detained immigrants can be properly lumped together with convicted prisoners.

Finally, by not raising it before this Court, Defendants have waived their argument that § 1589 encourages arbitrary enforcement. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008).

## V. Despite Defendants' Contentions to the Contrary, Neither § 1983 Nor *Monell* Has Any Application to Plaintiffs' TVPA claims.

Defendants seem to argue that because civilly detained immigrants enjoy constitutional protections that could be enforced against Defendants through § 1983, they cannot pursue TVPA claims. Appellees' Br. at 39-40. They go so far as

to argue that allowing such non-constitutional claims would "destabilize[]" § 1983. *Id.* at 39. Unsurprisingly, Defendants cite no authority for this baseless argument. Many federal statutes confer rights beyond those found in the Constitution that are enforceable against defendants subject to liability under § 1983. These include statutes that expressly reference government defendants, like RLUIPA and the ADA, and statutes that do not, *see, e.g., Chandler*, 538 U.S. at 122 (municipalities are "persons" subject to False Claims Act liability); *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 104 (2d Cir. 2024) (municipalities are "person[s]" subject to Fair Housing Act liability). Either way, § 1983 has no preclusive effect.

Defendants took their § 1983 argument a step further, contending that Plaintiffs must satisfy *Monell* pleading requirements. *See* Appellees' Br. at 44-46. Yet that contention is woefully out of place because a *Monell* claim is a § 1983 claim brought against a municipality, *see Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 30-31 (2010), and Plaintiffs have not even raised a § 1983 claim. This Court should not dismiss a claim for failure to satisfy pleading requirements of an entirely different cause of action.

Defendants wrongly assert that "all" "federal rights asserted against counties" "trigger *Monell* analysis" and in support cite cases that allow a plaintiff to assert a statutory right via § 1983 when that statute lacks its own private cause of action. Appellees' Br. at 44-45 (citing *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 188 (2023) (allowing plaintiff to assert FNHRA rights under § 1983 where statute contains no "express private judicial right of action"); *Martin v. Piserchia*,

No. CV 23-21669 (RMB-EAP), 2024 WL 3812071, at *11 (D.N.J. Aug. 14, 2024)

("Sometimes . . . federal statutes without an express private right of action may be

enforced vis-à-vis 42 U.S.C. § 1983 . . . ."); *McGovern v. City of Philadelphia*, No.

CIV. A. 07-3817, 2008 WL 269498, at *3 (E.D. Pa. Jan. 30, 2008), *aff'd,* 554 F.3d 114

(3d Cir. 2009) (§ 1981 contains no express remedial provision)).[2] These cases are

inapposite because the TVPA establishes a statutory private cause of action, *see* 18

U.S.C. § 1595, and Plaintiffs bring claims under that provision—not § 1983. Thus,

*Monell* does not apply. But even if it did, Plaintiffs could readily satisfy the *Monell*

requirements because it was Kenosha County's "official policy," outlined in the Jail's

handbook, that gave rise to the harm. *See Glisson v. Indiana Dep't of Corr.*, 849

F.3d 372, 379 (7th Cir. 2017); SA-019, ¶¶ 24-26.

    Defendants also argue that Plaintiffs have inadequately alleged that Kenosha

County is directly liable under § 1589(b) for "knowingly benefit[ting]" from a

violation of § 1589(a). Appellees' Br. at 46. Defendants waived this argument by

failing to develop it in the district court. *Coleman*, 690 F.3d at 818. Even if it were

---

[2] Defendants' citation (p. 45) to *Bauer v. City of Pleasanton*, No. 19-cv-04593-LB, 2021 WL 2224016, at *16-17 (N.D. Cal. June 2, 2021), is misleading. There, the court separately analyzed the plaintiff's *Monell* and ADA claims; it did not apply *Monell* pleading requirements to the ADA claim. *Id.* Defendants also cite *Ware v. Bishop*, No. 1:23-CV-00220-BU, 2024 WL 1915396, at *6 (N.D. Tex. Jan. 31, 2024), *report and recommendation adopted,* No. 1:23-CV-00220-H, 2024 WL 1914357 (N.D. Tex. May 1, 2024), contending that RLUIPA claims can be brought under § 1983 and be subject to *Monell* requirements. But the weight of caselaw rejects that contention. *See Agrawal v. Briley*, No. 02 C 6807, 2004 WL 1977581, at *13–14 (N.D. Ill. Aug. 25, 2004); *Appel v. King Cnty.*, No. 2:21-cv-00621-TL-JRC, 2022 WL 1105810, at *3 (W.D. Wash. Jan. 4, 2022), *report and recommendation adopted,* No. 2:21-cv-00621-TL-JRC, 2022 WL 1102194 (W.D. Wash. Apr. 13, 2022).

not waived, this argument would fail because Plaintiffs more than adequately allege that Kenosha County financially benefitted from the § 1589 violation by saving money on janitorial labor and thus maximizing its profits from the ICE contract. SA-018, SA-028, ¶¶ 17-19, 86-87. Indeed, Defendant Miller commented to reporters that Kenosha County "continue[d] to suffer from the loss of millions of dollars in revenue" years after ICE suspended its contract with Kenosha County, thus demonstrating that Kenosha County did not reinvest every dollar from ICE back into housing the detainees; it enjoyed a surplus that it used for other budget items. Dist. Ct. ECF No. 38 at 36-37. None of the arguments Defendants advance allow Kenosha County to evade liability.

## VI. Defendants Argue that the "Civic Duty Exception" to the Thirteenth Amendment Bars Plaintiffs' TVPA Claim, but this Argument Fails.

Defendants assert that this Court should import the judicially-created "civic duty exception" into § 1589 because Congress enacted the TVPA pursuant to the Thirteenth Amendment. Appellees' Br. at 42-43. To begin, this argument rests on a questionable premise. Although some courts have stated that Congress passed the TVPA to implement the Thirteenth Amendment, *see* Appellees' Br. at 43 (citing *Toviave*, 761 F.3d at 629; *U.S. v. Edwards*, 995 F.3d 342, 345 (4th Cir. 2021)), other courts have held that Congress enacted it not under the Thirteenth Amendment but rather under the Commerce Clause. *See Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1133 (10th Cir. 2016) ("The TVPRA was not enacted under the Thirteenth Amendment; it was enacted under Congress's Commerce Clause powers.") (citing H.R. Rep. No. 108–264(I), at 14 (2003) ("[T]he

Committee finds the authority for [the TVPRA] in article I, section 8 of the Constitution.")); *Francisco v. Susano*, 525 Fed. Appx. 828, 834 n.8 (10th Cir. 2013); *Ditullio v. Boehm*, 662 F.3d 1091, 1097 n.4 (9th Cir. 2011). Moreover, even if the TVPA were enacted to implement the Thirteenth Amendment, that does not mean that § 1589 incorporates every judicial interpretation or exception applied to Thirteenth Amendment claims. In fact, Congress can prohibit conduct that "extend[s] far beyond" the conduct the Thirteenth Amendment prohibits. *See Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971).

Moreover, in enacting § 1589, Congress rejected the application of common law interpretations of the Thirteenth Amendment to the TVPA. In *U.S. v. Kozminski*, 487 U.S. 931 (1988), the Court construed the phrase "involuntary servitude" in the TVPA consistently with how courts had construed the same term in the Thirteenth Amendment. *Id.* at 944. On this basis, the Court concluded that the TVPA's prohibition of involuntary servitude was limited to cases of "physical or legal coercion"—and did not extend to psychological coercion. *Id.* at 944, 948. As this Court and others have recognized, Congress enacted § 1589 in response to *Kozminski*'s ruling constraining the TVPA to the limits of the Thirteenth Amendment, with the aim of expanding its reach beyond those bounds. *See Taylor*, 110 F.4th at 1030 ("Congress disagreed with the way the Court 'narrowly interpreted' the involuntary servitude statute . . . ."); *Martinez-Rodriguez*, 31 F.4th at 1156 (observing that § 1589 "was enacted to abrogate, as a practical matter, the Supreme Court's narrow interpretation of 'involuntary servitude' in *United States v.*

*Kozminski* . . . .") (citing *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir.

2011)); *United States v. Kaufman*, 546 F.3d 1242, 1261 (10th Cir. 2008) ("[I]n

enacting § 1589, Congress sought to expand *Kozminski*'s limited definition of

coercion under § 1584 . . . ."); *United States v. Callahan*, 801 F.3d 606, 618 (6th Cir.

2015) ("Congress enacted § 1589 in response to *Kozminski* to expand the forms of

coercion that could result in forced labor.").

This Court understood the enactment of § 1589 to be a "clear congressional

mandate that the statute must be read to proscribe variations of human

exploitation not recognized as such by pre-existing law." *Taylor*, 110 F.4th at 1030.

This Court then warned that courts "must be careful . . . not to give the statute a

crabbed reading that will undermine Congress's work." *Id.* Defendants invite this

Court to instead throw caution to the wind and import judicially-created limitations

on Thirteenth Amendment liability into § 1589 without any textual basis to do so.

This Court should heed its prior admonishment and reject Defendants' invitation.

The civic duty exception does not apply here for the independent reason that

Defendants obtained Plaintiffs' forced janitorial labor not as a function of county

government, but instead, as a federal contractor, seeking to increase profits.

Defendants' only retort to this argument is that a municipal jail does not "become[]"

a private entity by contracting with the federal government. Appellees' Br. at 43.

That may be true, but it is irrelevant. What matters is that Kenosha County was

operating in the role of a private government contractor. As discussed above in Part

III.B., Kenosha County had no independent authority to detain Plaintiffs beyond its

contract with ICE. Even if the civic duty exception to the Thirteenth Amendment permits Kenosha County to require its own citizens to serve on a jury or to require its own inmates to clean its jails and prisons, the civic duty exception does not permit Kenosha County to require ICE's detainees to clean the Kenosha County Jail to maximize county profits. Plainly put, that is not a public duty that ICE's detainees owed to Kenosha County. *See Butler v. Perry*, 240 U.S. 328, 332-33 (1916).

Finally, Defendants' "civic duty" argument hinges on downplaying Plaintiffs' allegations, casting the forced labor at issue as "general housekeeping responsibilities." Appellees' Br. at 41 (citing *Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978)). But Plaintiffs' allegations of forced janitorial labor extend beyond mere housekeeping tasks, as outlined in Plaintiffs' opening brief (p. 44), and, in any event, it would be premature to dismiss Plaintiffs' TVPA claims on these grounds. *See McHenry County*, 2023 WL 130496, at *5 (citing *Novoa*, 2018 WL 3343494, at *14).[3]

## VII. Contrary to Defendants' Arguments, They are Not Immune from TVPA Liability.

Defendants argue that the Individual Defendants enjoy qualified immunity and that "derivative sovereign immunity" bars Plaintiffs' claims. Both arguments fall flat.

---

[3] The Federal Bureau of Prisons regulations Defendants cite are simply inapplicable. Appellees' Br. at 42. Those regulations pertain only to pretrial criminal inmates—not to Plaintiffs who were civilly detained. *See Fong Yue Ting v. United States*, 149 U.S. 698, 728-30 (1893) (observing that deportation proceedings are civil in nature—not criminal).

### A. The Individual Defendants Are Not Entitled to Qualified Immunity.

In support of their argument that qualified immunity is available as a defense to the TVPA, Defendants cite various cases applying qualified immunity to statutory claims, Appellees' Br. at 47, but they do not identify any persuasive reasoning in these cases that would support applying qualified immunity to the TVPA. Their argument amounts to the following syllogism: The TVPA is a statute; some lower courts apply qualified immunity to some statutes; thus, this Court should apply qualified immunity to the TVPA. *Id.* But that's a logical fallacy.

Moreover, that argument ignores that the Seventh Circuit has expressly cautioned against extending qualified immunity beyond § 1983 to "more recent, and more detailed, laws," like the TVPA. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000). The only Seventh Circuit decision they cite in support, *Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008), was abrogated in relevant part a year later by *Nelson v. Miller*, 570 F.3d 868, 887 (7th Cir. 2009). Accordingly, *Koger* does not support the contention that qualified immunity applies to the TVPA.

Even if qualified immunity applied to the TVPA (it does not), it would not shield the Individual Defendants from liability because Plaintiffs' rights under § 1589 are clearly established. Defendants offer no response to the precept that "the words of the pertinent federal statute . . . [can] be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). Because § 1589 by its plain language forbids

municipal actors from forcing civilly detained immigrants to perform janitorial work (*see* Part II above; Appellants' Br. at 7-14), Plaintiffs' rights are clearly established and qualified immunity does not apply.

In any event, it would be premature for the Court to dismiss the claims against the Individual Defendants on qualified immunity grounds. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see, e.g., McHenry County*, 2023 WL 130496, at *6.

## B. "Derivative Sovereign Immunity" Does Not Shield Defendants from Liability.

To establish immunity under *Yearsley*, it is not enough that the federal government authorized Kenosha County to house civilly detained immigrants in the Jail. Defendants would need to prove that ICE "authorized *and directed*" *the challenged conduct—i.e.*, forcing civilly detained immigrants to perform janitorial labor in the jail's common areas without pay and under threat of cell lock down and solitary confinement. *See Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940) (emphasis added); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016), *as revised* (Feb. 9, 2016) (*Yearsley* immunity is available when federal contractors "simply performed as the Government directed"). They cannot do so. *See Yeend*, 2025 WL 959202, at *8–9 ("Defendant has failed to establish that any portion of the [ICE] Contract and related documents required Defendant to coerce detainees to provide custodial . . . labor . . . .").

In support of their argument that the federal government "authorized and directed" such conduct, Defendants cite nothing in the pleadings. Instead, they cite only a 2016 ICE detainee handbook (Exhibit 1 to the affidavit filed with their

24

motion to dismiss) which is extrinsic to the Complaint, and thus not properly before this Court. *See* Part I; Appellants' Br. at 42-43; Appellees' Br. at 49 (citing Dist. Ct. ECF No. 19-1).

Even if the Court could consider it, this handbook does not describe detainees' duty to perform janitorial labor in the common areas of the detention facility, but rather detainees' responsibility to *clean up after themselves*, including making their bed, removing their own hairs from the sink, throwing their trash into the trash cans, and refraining from leaving crumbs behind from food they have eaten. Dist. Ct. ECF No. 19-1 at 12, 14. As discussed in Plaintiffs' opening brief (pp. 44-45), the ICE detention standards confirm that ICE detainees may only be required to clean up after themselves and cannot be forced to perform any other work. For instance, the PBNDS state that "[d]etainees . . . shall not be required to work, except to do *personal* housekeeping," and define "*personal* housekeeping" as consisting of making their beds, stacking their loose papers, not leaving debris and clutter on the floors or dividers, and refraining from hanging objects from furniture or light fixtures.[4] Even the INS Voluntary Work Program Detention Standard that Defendants relied on in the district court forbids required cleaning labor beyond "*personal* housekeeping." Dist. Ct. ECF No. 19-2, at 2 (emphasis added).

In an attempt to sidestep these ICE standards, Defendants say that they "contradict" ICE's detainee handbook. Appellees' Br. at 49. ICE's standards do not

---

[4] *PBNDS 2011*, ICE, at 405-06 (emphasis added), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

contradict ICE's handbook, but even if they did, such a factual dispute would plainly foreclose dismissal at the pleading stage. *See, e.g.*, *Novoa*, 2018 WL 4057814, at *3; *see also Menocal v. GEO Grp., Inc.*, No. 22-1409, 2024 WL 4544184, *8 (10th Cir. Oct. 22, 2024). Moreover, the portions of the PBNDS that Defendants cite regarding cleaning in "general use areas," the "medical facility," and the dining room, relate to *paid* work performed as part of a voluntary work program—not forced work. *See* Appellees' Br. at 49.

Lastly, Defendants offer no response to Plaintiffs' contention that the federal government could not "validly confer[ ]" on Defendants the authority to violate the law, Appellants' Br. at 46, except to say that their conduct does not violate the TVPA in the first place. Appellees' Br. at 49. Of course, if Defendants' conduct conformed to the TVPA, they would have no need to invoke *Yearsley* immunity.

## Conclusion

For all the reasons stated above and in Plaintiffs' opening brief, the district court's judgment should be reversed, and the case should be remanded for further proceedings. However, if this Court instead affirms on an alternative basis, Plaintiffs seek leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

/s/ *Margaret E. Truesdale*

Margaret E. Truesdale
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Ste. 4000
Chicago, IL 60602
Tel/Fax: 312-604-2630
mtruesdale@hsplegal.com
*One of the Attorneys for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

The undersigned, as counsel for Plaintiff-Appellants Aleksey Ruderman, Arturo Saldivar, and Chris Pocknell, certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Cir. R. 32(c) because it contains 6,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and as measured by Microsoft Word's word-count feature.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A), as modified by Cir. R. 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6) because it is prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 12-point Century Schoolbook font.

/s/ *Margaret E. Truesdale*
Margaret E. Truesdale
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Ste. 4000
Chicago, IL 60602
Tel/Fax: 312-604-2630
mtruesdale@hsplegal.com
*One of the Attorneys for Plaintiffs-Appellants*
